**People of State of Illinois, Defendant in Error, v. Ernest Miller, Plaintiff in Error.**

**Gen. No. 9,781.**

Opinion filed November 6, 1951. Released for publication December 3, 1951.

L. ALLAN WATT, of Winchester, for plaintiff in error.

RICHARD E. MANN, State's Attorney, Scott County, of Winchester, for defendant in error.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

An information was filed in the county court of Scott county, Illinois, charging the defendant Ernest Miller with trespassing upon the land of Opal and Blanche Christison, in violation of section 565 of chapter 38 of the Revised Statutes of Illinois for the year 1949 [Jones Ill. Stats. Ann. 37.534]. A motion to quash the information was filed by counsel for defendant, and the first two grounds thereof were confessed by the State's Attorney. On August 30, 1950 the State was granted leave to file an amended information, and the cause was set for hearing on the merits by agreement of the parties, on September 6, 1950.

On September 6, 1950, the defendant was in open court in person and by his counsel, and the People of the State of Illinois were present by said State's Attorney. The State filed an amended information. The motion to quash filed August 29, 1950 was renewed as to the amended information, and as an additional reason to quash it was urged that the defendant had no notice of the contents of the amended information prior to the opening of court. The renewed motion to quash was denied.

The amended information alleged that on the 1st day of August, 1950, at and within the County of Scott in the State of Illinois, defendant Ernest Miller did then and there wilfully and unlawfully trespass upon the land of another, to wit: Opal Christison and Blanche Christison, in that he was then and there unlawfully upon said lands, and was notified by the said Blanche Christison, one of the occupants thereof, to depart therefrom, and then and there neglected or refused so to do. Defendant entered a plea of not guilty and filed a waiver of trial by jury, and the court proceeded to hear the cause on its merits on the same day, September 6, 1950.

From the evidence it appears that the defendant, Ernest Miller, on April 29, 1946, entered into a writ-

ten contract for the purchase of a 280-acre farm from Oscar Freesen, under the terms of which contract he was to have immediate possession of the farm, which included a one-fourth acre tract, where the alleged trespass occurred. The defendant had paid a substantial part of the purchase price and was to receive a warranty deed when the balance was paid, the warranty deed being held in escrow. The defendant went into possession of the farm, at which time one Frank Gregory was living in a small building or shack which he himself had built on the corner in question in 1942, with the permission of the then owner, Oscar Freesen.

The evidence shows that Frank Gregory went to work for Oscar Freesen during his lifetime and before the premises were sold to Miller, and as Gregory had no home Freesen told him that he would sell him the corner in question for $25, and that Gregory was to work for Freesen when he was wanted. Gregory went to work for someone else and when Freesen needed him he did not come back. Gregory built a small house on the land in question in 1942, he was married in 1945, and lived there until he died in 1948. Oscar Freesen, in his lifetime, signed a statement that he had sold to Frank Melvin Gregory the tract of land in question and that he received full purchase price therefor. This statement was dated April 13, 1942 and was acknowledged and the endorsement on the back showed that it was recorded in the Recorder's Office of Scott county, Illinois on July 24, 1950. The record does not show that this statement was admitted in evidence, but the trial court stated that he believed that it was admitted.

Upon taking possession of the farm by the defendant, Ernest Miller, Miller had a conversation with Frank Gregory, at which time Miller told Gregory that he had no objection to him living there; that after Gregory died his wife lived there off and on, although

the evidence is conflicting as to how much she did really live there after the death of her husband. There is evidence to the affect that the tract of land was virtually abandond by her, but other evidence indicated that she was merely away on visits. All of the taxes on said land were paid by the defendant, Ernest Miller, since the date of the signing of the contract, and no taxes were ever paid on the land in question by Frank Gregory, his widow, or the Christisons.

On June 20, 1950, Frank Gregory's widow leased the land in question to Opal and Blanche Christison for a term of ten years. The lease was admitted in evidence, and it appeared that it was not signed by the lessees.

On August 5, 1950 the defendant was mowing weeds and cutting brush on the land in question when he was told to get off by Blanche Christison, but he continued to cut the brush. Defendant himself testified that he was informed by Opal Christison to "keep out" of the premises involved, but that he had informed Mr. Christison that he was the owner of the premises, that he had entered upon the same, and that on or about August 1st Opal Christison's wife had given him orders to get off the premises, but he disregarded the same, and the next day Mrs. Gregory had ordered him off, which order he disregarded.

The court found the defendant guilty as charged in the first count of the amended information, and found that the age of the defendant was 47 years. The defendant filed a motion in arrest of judgment and for a new trial, which was denied by the court. The court ordered the defendant to pay a fine of $5 and costs. Defendant brings the case to this court on a writ of error from the county court of Scott county, Illinois, to review the judgment for conviction rendered against him.

Defendant first assigned as error that the court erred in requiring him to go to trial over his objection when he had not been furnished with a copy of the amended information at least one hour before he was arraigned.

 The record discloses that no demand for a copy of the amended information was at any time filed in the proceedings, and that the only reference to the fact that he was not furnished with a copy of the amended information, as provided for in section 736a of chapter 38 of the Revised Statutes of Illinois for 1949 [Jones Ill. Stats. Ann. 37.706], was included in a motion to quash the amended information. Failure to furnish a copy of an information is not a proper ground for a motion to quash. The requirement that the accused should be furnished with a copy of the information against him not less than one hour previous to his arraignment is directory only. In order to make the omission to comply with the requirement of section 736a of chapter 38 available on error, the accused must demand a copy of the information filed against him, and if the court should refuse his request upon the preserving of that fact in the record it would be error, and if, as in the case at bar, the defendant would plead and go to trial without such a demand, he waives his right. *People v. Poe*, 304 Ill. App. 601. The defendant having made no demand for a copy of the amended information, provided for by statute, the court had jurisdiction, and there was no error in requiring the defendant to plead and to go to trial.

It is next contended by the appellant that the court erred in finding the defendant wilfully and unlawfully committed a trespass upon the land of Opal and Blanche Christison, and erred in permitting a penal statute relating to criminal trespass to be used to try disputed rights in real estate.

579

The statute under which the information was drawn, being section 565, chapter 38 of the Revised Statutes of the State of Illinois, 1949, reads in part as follows:

"Whoever . . . is unlawfully upon the . . . land of another and is notified to depart therefrom by the owner, or occupant, or by his agent or servant, and neglects or refuses so to do, . . . shall be guilty of a misdemeanor . . . ."

The only question involved is whether or not the defendant was unlawfully upon the land of Opal Christison and Blanche Christison, when he was ordered off and wilfully refused to comply with the order to vacate, and the burden of proof is on the State to prove beyond a reasonable doubt those essential elements of the offense charged.

The State must prove beyond a reasonable doubt that Opal and Blanche Christison were lawfully in possession of and rightfully occupied the land in question and that the defendant Miller had no right of entry, and after having entered was obliged to vacate upon being ordered to do so by the Christisons.

The evidence shows that the defendant Miller had a good and sufficient contract for a warranty deed to the farm consisting of 280 acres which included the land where the alleged trespass occurred. That he went into possession of the land on April 29, 1946 as provided for in said contract; that he paid the taxes on all of the land he purchased, including the land in question, and exercised the rights of ownership over it. The evidence further shows that the defendant Miller knew that Frank Gregory was living on the land in a shack he had built, and that he had seen the paper containing a statement by Freesen that he had sold the tract of land in question to Gregory and had received the full purchase price therefor. There was some question as to whether or not this paper had been admitted into evidence.

580

This statement is not a deed, but is a receipt or an acknowledgment of sale, and does not pass title to the holder. There was evidence given by the widow and son of Freesen, who was deceased, that no deed was ever given to Gregory by Freesen, because Gregory failed to carry out the terms of the agreement under which he was allowed to occupy the land.

It appears from the evidence that Frank Gregory died in 1948 and that his widow occupied the shack on the premises off and on until she leased the land to the Christisons for a term of ten years beginning June 20, 1950, which lease was not signed by the Christisons, but by Anna L. Gregory alone.

It is not clear from the record that Mrs. Gregory continued to live on the land after her husband's death. There was evidence that she had lived elsewhere and visited the land on several occasions only, which, if true, would amount to an abandonment of her interest in the land, if any she had.

It does not appear that the defendant Miller knew that the Christisons claimed an interest in the land under the terms of an alleged lease from Mrs. Gregory, or that he had any knowledge of their claim until the day he was ordered to vacate the land by the Christisons.

 This court has examined the evidence and the record with care, and is convinced that the evidence does not prove guilt of the defendant beyond all reasonable doubt, and he should therefore have been acquitted.

 If the conviction in this case were allowed to stand on the facts disclosed by the record it would undoubtedly settle a dispute over title and right of possession of land. A penal statute relating to criminal trespass cannot be invoked to try disputed rights of title. While there are no cases in this state deciding this question, it is well-settled law in many states that

it is an abuse of the penal statute relating to criminal trespass to use it to try disputed rights in real property. *Steele v. State,* 191 Ind. 350, 132 N. E. 739.

■ Under the state of the record in this case it cannot be said that the State proved beyond all reasonable doubt that Opal and Blanche Christison had a right to possession of said land and that the defendant Miller was unlawfully on said land when ordered to depart, and did unlawfully refuse to depart when so ordered. These elements must be so proven by the State before a conviction under the statute in question can be sustained. Furthermore the prosecution in this case is in the nature of a suit for possession, and the title to or right to possession in land cannot properly be tried in a suit for the criminal offense of trespass.

For the reasons herein set forth the judgment of conviction by the trial court is reversed.

*Reversed.*