PEOPLE *v.* PRISCILLA JOHNSON

1. TRESPASS—CRIMINAL TRESPASS—AVAILABILITY OF REMEDY—PEACE-
FUL POSSESSION.

Criminal trespass statute may be applied instead of civil rem-
edies such as ejectment or forcible entry and detainer to any
people remaining upon the lands of another without lawful
authority, even though they are in peaceful possession; how-
ever, a finding of *intent* to remain without lawful authority is
essential to a finding of guilt (CLS 1961, § 750.552).

2. TRESPASS—CRIMINAL TRESPASS—AVAILABILITY OF REMEDY—QUES-
TIONS OF TITLE.

The criminal trespass statute cannot be applied to settlement
of questions of title or right to possession, and therefore is
not a complete substitute for civil remedies, because a person
who thinks he has title to or the right to possession of prop-
erty is incapable of intent to remain without lawful authority
CLS 1961, §§ 600.2932, 600.5604, 600.5634, 750.552).

3. TRESPASS—CRIMINAL TRESPASS—AUTHORITY TO REMAIN IN POS-
SESSION—FACT QUESTION.

Whether the city of Detroit implicitly gave defendants lawful
authority to remain in a house owned by the city and scheduled
to be razed for urban renewal by not objecting to occupation
of the house by defendants for four days is a question of
fact for the jury to determine; it cannot be said as a matter
of law that the city is estopped from making a complaint by
the four-day delay.

Appeal from Recorder's Court of Detroit, Joseph
A. Gillis, J.   Submitted Division 1 April 9, 1969, at

REFERENCE FOR POINTS IN HEADNOTES
[1–3] 52 Am Jur, Trespass §§ 85, 86.

Detroit. (Docket No. 5,284.) Decided April 21, 1969.

Priscilla Johnson and 14 others were convicted of criminal trespass. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Patricia J. Pernick,* Assistant Prosecuting Attorney, for the people.

*Goodman, Eden, Robb, Millender, Goodman & Bedrosian* and *Feliciano Colista,* for defendants.

BEFORE: LESINSKI, C. J., and FITZGERALD and V. J. BRENNAN, JJ.

LESINSKI, C. J. Defendants appeal their conviction by jury on January 12, 1967, of criminal trespass arising from their refusal to depart from the lands of another after request, in violation of CLS 1961, § 750.552 (Stat Ann 1954 Rev § 28.820[1]).

The trespass occurred upon land owned by the city of Detroit and under the control of the Detroit Housing Commission. The house situated upon the land was vacant, had been rendered unusable by city employees and was intended for demolition, the property having been acquired for urban renewal. On September 26, 1966, a group of clergy unboarded and unlocked the door to the house, entered and cleaned and repaired the house to make it habitable. Certain individuals from this group agreed to stay in the house in order to bring the housing shortage in Detroit to public attention. A public statement by Police Commissioner Ray Girardin indicated that Girardin had given orders to make no arrests be-

cause "no complaint had been made by the owner". On September 30, 1966, after an earlier meeting, members of the group, who later became defendants, proceeded to move defendant Mrs. Johnson and her family, who were in need of decent housing, into the home. On that date the assistant director of the Detroit Housing Commission made a complaint to an inspector of the Detroit Police Department and requested the police to arrest all persons on the premises for violation of trespass laws if they refused to leave.

Shortly thereafter the inspector, joined by four other police officers, instructed the 15 defendants that a trespass complaint had been filed, read the trespassing act, asked if everyone understood the act, and told them to leave the premises if they did not wish to be arrested. After the inspector allowed defendants an opportunity to confer, defendants announced that they would refuse to leave and wished to be arrested. The police then arrested all 15 defendants.

The 15 defendants were found guilty by a jury in Detroit Recorder's Court of violation of the criminal trespass statute, *supra.*

On appeal, defendants contend that the criminal trespass statute is inapplicable to a peaceful occupant of property and that the city's conduct precluded use of a criminal trespass action to evict.

The conviction of defendants was based upon violation of the emphasized, second, portion of the criminal trespass statute: .

. "Any person who shall wilfully enter, upon the lands or premises of another without lawful authority, after having been forbidden so to do by the owner or occupant, agent or servant of the owner or occupant, or *any person being upon the land or premises of another, upon being notified to depart there-*

*from by the owner or occupant, the agent or servant
of either, who without lawful authority neglects or
refuses to depart therefrom, shall be guilty of a mis-
demeanor."* (Emphasis supplied.)   CLS 1961, § 750-
.552 (Stat Ann 1954 Rev § 28.820[1]).

Regarding defendants' contention of inapplicabil-
ity of the criminal trespass statute, defendants as-
sert that Michigan civil remedies for obtaining pos-
session, *i.e.,* ejectment, summary proceedings, and
forcible entry and detainer,[1] operate to protect
peaceful possessors against sudden expulsion.  They
argue that the statutory scheme of civil remedies
requires a narrow construction of the criminal tres-
pass statute so as to prevent a nonoccupying land-
owner from applying criminal sanctions against a
peaceful possessor.[2]

In connection with defendants' argument, they
rely primarily upon *Watson* v. *State* (1879), 63 Ala
19, and *Steele* v. *State* (1921), 191 Ind 350 (132 NE
739).  In *Watson,* the defendant was indicted under
a criminal trespass statute which prohibited enter-
ing a dwelling house without legal cause or excuse
and after a warning within the preceding six months
not to do so.  The evidence indicated that defendant
was not warned not to enter until after he was in
actual possession.  The court held:

"A wrongdoer in actual possession, though the
constructive possession may reside in him in whom
the title is vested, cannot be   *   *   *   proceeded
against under the statute."

---

[1] CLS 1961, § 600.2932, as amended (Stat Ann 1968 Cum Supp,
§ 27A.2932); CLS 1961, § 600.5604 (Stat Ann 1962 Rev § 27A.5604);
CLS 1961, § 600.5634, as amended (Stat Ann 1968 Cum Supp § 27A-
.5634).

[2] The "premises of another" as used in the statute is broad enough
to include property owned by a city or county.  See *Kitchens* v.
*State* (1966), 221 Ga 839 (147 SE2d 509).

Defendants suggest this holding would bar conviction in the instant case. We disagree. In *Watson*, the court merely found that the defendant could not be convicted of violation of a statute prohibiting unlawful entry after notice, where the entry into possession occurred *prior to* receipt of notice. There, unlike the instant case, the statute did not prohibit *refusal to depart* from premises after a request by the owner or occupant. Thus, the conviction in *Watson* clearly could not be affirmed where the statute did not prohibit refusal to depart after a request by the owner to do so.

In the *Steele Case, supra,* cited by defendants, a subtenant who entered property without approval of the owner, but with approval of the tenant, was prosecuted under a criminal trespass statute applicable to persons *unlawfully* on the lands of another who refuse to leave after a request by the owner. The court reversed a conviction under the statute, stating that a civil remedy rather than the criminal trespass statute should have been used. Defendants suggest that therefore in the instant case only civil remedies are available. However, we find, as the *Steele* court found, that the crux of the *Steele Case* result was failure to demonstrate any criminal intent of the subtenant since the subtenant was not unlawfully on the owner's lands. The court found that the subtenant was in lawful possession of the premises since the lease contained no provision against subletting.

In the instant case, the statute requires that the defendant must be on lands of another "without lawful authority" and neglect or refuse to depart after notice, to be guilty of a criminal trespass. The requisite criminal intent required for conviction under the failure-to-depart portion of the statute is established by an intention to remain upon the lands

of another without lawful authority upon being requested to depart. See *State* v. *Larason* (1956), 75 Ohio L Abs 211 (143 NE2d 502).[3]  The *Larason* court stated regarding intent under the Ohio criminal trespass statute:

" 'In accordance with the general rule that the existence of a criminal intent is an essential element of a statutory offense, it is the rule in many jurisdictions that criminal intent is an essential element of the statutory offense of trespass, even though the statute is silent as to intent; and if the act prohibited is committed in good faith under claim of right or color of title, although accused be mistaken as to his right, unless it is committed with force or violence of a breach of the peace, no conviction will lie, the view taken being that it will not be presumed that the legislature intended to punish criminally acts committed in ignorance, by accident or under claim of right, and in the bona fide belief that the land is the property of the trespasser, unless the terms of the statute forbid any other construction.' This Court quotes this statement from 87 CJS, Trespass, § 147, page 1103, with approval."

The requirement of an intent to remain upon the lands of another without lawful authority causes the criminal trespass statute involved in the instant case to be inapplicable in determination of questions of title to or right to possession of real property where the act prohibited was committed in good faith under a claim of right or color of title.[4]  The criminal trespass statute therefore is not a complete

---

[3] See, also, *Johnston* v. *State* (1957), 232 Miss 102 (98 So 2d 445); *Lambert* v. *Rainbolt* (1952), 207 Okla 451 (250 P2d 459).

[4] See *People* v. *Miller* (1951), 344 Ill App 574 (101 NE2d 874). Similarly, this requisite would prevent an occupant who acquired possession wrongfully from using the criminal trespass statute against the owner of the property. *Watson* v. *State* (1879), 63 Ala 19; *Lambert* v. *Rainbolt, supra.*

substitute for ejectment, summary proceedings and forcible entry and detainer.[5]

In the instant case the trial court specifically instructed the jury that elements of the offense which the prosecution must prove include a requirement that the defendants be willfully upon the lands of another and that defendants without lawful authority neglected or refused to depart. The court further stated:

"You must determine this issue as to whether they had a lawful authority, or, in other words, they had some good faith color of right to remain on the property after having been asked to leave; and if they claim or have some color of right, some lawful authority or some claim to remain there, then they cannot be held criminally responsible under this statute for their refusal to leave.

"The mere fact that the defendants refused to obey the request of the police, as agents of the Detroit Housing Commission of the city of Detroit, a municipal corporation, to leave the premises when requested is not a violation of the law if they had a lawful authority to remain on the property; and it's up to the jury to determine whether they had such a lawful authority."

Sufficient evidence was presented from which a jury properly could conclude that all elements of the offense were proven. The trial court did not err in its application of the criminal trespass statute.

Defendants also contend that the city's conduct precluded the use of a criminal trespass action to evict. In particular, they stress the city's failure to file a complaint against defendants until four days after occupancy began and the Police Commission-

---

[5] For example, the criminal trespass statute would be inapplicable in disputes between a landlord and tenant where the tenant has a good faith claim of right. *Steele* v. *State* (1921), 191 Ind 350 (132 NE 739).

er's statement that the police would not act if no complaint were brought and no disturbance of the peace or destruction of property occurred.

In the instant case the trial court instructed the jury to consider the following in determining whether defendants had lawful authority to remain on the premises:

"Did the Detroit Housing Commission have knowledge that either the defendants or their associates had occupied this property for the period several days immediately prior to September 30, and did it take any steps to terminate this occupancy, or did it acquiesce in the occupancy. You may also consider whether the Detroit Housing Commission was aware of the purpose of the occupancy during the period immediately preceding September 30."

The jury clearly had before it the question of whether the Detroit Housing Commission's conduct provided defendants' lawful authority to remain on the premises. Sufficient evidence having been presented from which the jury properly could determine that defendants were without lawful authority to remain on the premises, the jury's determination to that effect is conclusive. It cannot be said as a matter of law that the city is estopped by its four-day delay in filing a complaint against defendants. Upon review of the evidence we do not find that the city's conduct precluded use of a criminal trespass action to evict.

Affirmed.

All concurred.