UNITED STATES of America, Plaintiff-Appellee,

v.

Larry MILLER, Defendant-Appellant.

No. 80–2289.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted July 15, 1981.

Decided Sept. 16, 1981.

Jeffrey Fisher, Asst. U. S. Atty., Cheyenne, Wyo. (Toshiro Suyematsu, U. S. Atty., Francis Leland Pico, Asst. U. S. Atty., and George Santini, Legal Intern, Cheyenne, Wyo., on brief), for plaintiff-appellee.

John R. Hursh, Central Wyoming Law Associates, P. C. Riverton, Wyo., for defendant-appellant.

Before McWILLIAMS and DOYLE, Circuit Judges, and TEMPLAR,* District Judge.

WILLIAM E. DOYLE, Circuit Judge.

The question in this case is whether a criminal prosecution can be employed for

---

* Of the United States District Court, District of Kansas, sitting by designation.

the purpose of settling what in essence is a property dispute.

Defendant Larry Miller was charged with criminal trespass for crossing Indian land on the Wind River Indian Reservation. The prosecution was pursued under an assimilated Wyoming statute § 6–10–102 (1977), and the assimilation was through 18 U.S.C. § 13. It was made applicable to the Wind River Indian Reservation by 18 U.S.C. § 7. Section 6–10–102 provides as follows:

> Whoever enters into or upon the land or premises of another after being lawfully notified or forbidden to do so by the owner or occupant, or his agent or servant, or who, being upon the land or premises of another shall be lawfully notified to depart therefrom by the owner or occupant, or his agent or servant, and shall thereafter neglect or refuse to depart therefrom shall be guilty of criminal trespass, a high misdemeanor, and upon conviction shall be fined not more than Five Hundred Dollars ($500.00) or imprisoned in the county jail not to exceed six (6) months or by both such fine and imprisonment.

Miller contends: First, that he has an equal right of access to the property in question and thus could not be convicted for trespassing. Second, he claims that the elements of the criminal trespass statute were not established beyond a reasonable doubt, and he contends also that it was not shown that he received notice as required by that statute. Third, that the bringing of criminal charges against him was an abuse of the criminal process.

We are of the opinion that the criminal process should not be used for the purposes of settling a land dispute, and upon that basis we reverse the conviction and remand the cause with directions to dismiss the criminal charge.

The reservation in question was established in 1868 by a treaty. It is occupied by Shoshone and Arapahoe Tribes, which are now known as the Wind River Tribes. In 1905 the tribes ceded about half of their reservation to the United States for homesteading, and as a result of an act of Congress on March 3, 1905 (33 Stat. 1016), those lands were opened for public entry. In 1939 that portion of the lands which had not been sold was given back to the tribes (53 Stat. 1128). As a result of patents issued between 1905 and 1939, therefore, non-Indians, including the Miller family, became owners of tracts of land within the boundaries of the reservation.

The Miller family settled on the Wind River Reservation in the early 1900's. Larry Miller, the appellant herein, has always lived on the family's original homestead within the boundaries of the reservation, and, since the death of his father in 1958, he has operated the family ranch on that property. In 1929, Larry Miller's father also purchased several homesteads adjacent to and outside the western boundary of the Indian Reservation and not far from the family's home site. This property is bounded by the Rocky Mountains on the west and south, and by private property on the north. The defendant and his wife are present owners of that land, and also lease land which takes in a State of Wyoming school section and land owned by the United States Bureau of Land Management. All of this abuts the reservation. In order to get to the land owned and leased by the Millers on the western boundary of the reservation, travel is required for three-fourths of a mile across reservation property, or else travel upon a road which is privately owned by one Ignaz Schwinn. The terrain surrounding the land on the other sides is impassible. Schwinn prohibits access across the road on his property, and has barred the road and posted "no trespassing" signs thereon. The Miller family has been crossing the reservation to get to the land which is here in question on the western boundary of the reservation for some fifty years. These lands are utilized by Larry Miller as summer pasture in his cattle ranching enterprise, and the cattle are moved across the reservation periodically throughout each year.

The Bureau of Indian Affairs has repeatedly notified Larry Miller that his livestock have strayed on Indian lands and

were trespassing, and the Bureau has ordered Miller to remove his cattle. In addition, Miller and his father have both corresponded with the reservation officials concerning Indian regulations which require that a one-day permit be obtained each time Miller desires to drive his cattle across the reservation. Although Miller has sought an annual permit, in order to avoid the repeated necessity of a 50-mile trip one way to obtain a daily permit, he was informed that this was against the regulations. However, on two occasions Miller did obtain a daily permit.

We mention parenthetically that if it is against the regulations to issue an annual permit for the purpose of traveling the area in question, that regulation ought to be abolished so as to allow this necessary travel to take place. *Cf.* this court's decision in *Dry Creek Lodge v. Shoshone and Arapahoe Tribes*, 515 F.2d 926 (10th Cir. 1975). Involved here was the Indian Civil Rights Act which gives to non-Indians as well as Indians rights of protection against deprivation of due process and equal protection. Under the principles of due process a landowner may not be deprived of his access to his property without full opportunity to be heard in a civil proceeding.

On August 28, 1978, Miller, while driving his pick-up truck to a fence gate on the west end of the Upper Road, at the western exterior boundary of the reservation, had a confrontation with an officer of the Bureau of Indian Administration. This was Robert Robertson, a Range Superintendent. Miller was able to get around a gate which had been locked and he proceeded to drive on the road. Very soon thereafter he encountered Robertson, who asked him if he had a crossing permit. He stated that he did not and that he did not need permits, since he had the right to use the road to get to his land. Three weeks later, Miller received a letter from the BIA dated September 15, 1978 and signed by the Superintendent. This stated:

> This letter is to put you on notice that should any further trespass be committed on Tribal lands the matter will be turned over to the United States Attorney for prosecution.

There was a copy of the Wyoming criminal trespass statute attached to the letter. Soon thereafter the defendant was charged in the instant case with trespassing on the Upper Road on August 28th.

Unquestionably the basic issue in the case is whether Miller had a right of access across the reservation to get to his property. True, it is a criminal prosecution; it is also true that this is a very awkward way to decide this case.

Miller believes that he has such a right. The Indians and the United States claim that he does not have such a right. The government's position is that Miller has refused to recognize tribal ownership of the road, and, thus, the government, as Trustee of the Indians, had a duty to file this trespass action to establish Indian sovereignty over the property. The defendant, on the other hand, asserts a colorable claim of right to use the road to get to his property and maintains that the Indians have refused to recognize his property rights. It is a necessary exercise because otherwise he is locked out of his property.

The cause at bar is unlike the ordinary criminal trespass case because it is not a one-time incident. Indeed, the Millers have been using the road in question to reach their property for over fifty years. The Indians and the Millers have corresponded regarding the issue of whether daily crossing permits are a feasible resolution of their differences of opinion. Nevertheless, the record shows that the sole issue is the dispute over property rights, and it is impossible to understand why a dispute of this sort is being resolved in a criminal proceeding rather than in some more appropriate proceeding.

The trial court fully recognized that the dispute is not a question of criminal law, but rather is a difference over a right to utilize property in order to reach defendant's land. The government's only excuse was that civil proceedings delayed the outcome. The argument was that the Justice Department would only conclude that a civ-

il action was unnecessary where there is an express statute that can be used to enforce the law. The trial court stated that the court was trying a title by a trespass action. The trial court indicated that on more than one instance the goal of this criminal prosecution was to resolve the property dispute. The court expressed the intention to reach an ultimate solution to the property dispute, stating that "the court is interested in the ultimate solution of the problem." In sentencing the trial court said:

> The court in its decision had hoped that both sides to this controversy * * * would show some reason and find a compromise to your problems in this case * * * I think that there was no reason why [Miller and the Indian Tribes] couldn't have worked out a reasonable annual crossing permit * * * and thereby settled your differences * * * It's obviously ridiculous that the Indian Tribes haven't taken a single step to be reasonable in this matter. They have imposed conditions on you that are from a standpoint of an ordinary everyday rancher absolutely unreasonable, and I'm shocked that the Indian Tribes would take that position.
>
>     *     *     *     *     *     *
>
> I think the BIA created this mess through their administrative ineptitude * * * Consequently, some accommodation has got to be made, but at this point I see no way that's going to happen * * * (R. Vol. IV, at 3–4)

It is apparent, also, that the *government* realized that at issue here was a settlement of a long standing property difference because in its brief to the trial judge it was stated:

> The court enjoys the unique opportunity in this case to settle once and for all a long standing dispute that has been affecting relationships in the Crowhead area between the Arapahoe and Shoshone Tribes and the (non)-Indians residing in the Crowhead area on deeded lands located within the Reservation boundaries or immediately adjacent thereto. (Record, Vol. I, p. 180)

In its brief to this court the United States stated: "The August 28, 1978 incident was not an isolated occurrence, but rather marked the culmination of twenty years of refusal by the defendant to recognize the right of the Tribes as owners of the reservation." The record plainly shows that both parties in the case, as well as the trial court, recognized that the issue to be tried in this criminal prosecution was whether Miller was or was not entitled to cross the reservation to get to his lands.

The Wyoming courts have not spoken on the issue of whether it is an abuse of the criminal process to use a criminal trespass statute to try disputed rights to real property. However, other states which have considered the question have held that it is. In *Steele v. State*, 191 Ind. 350, 132 N.E. 739 (Ind.1921), the Indiana court held that a criminal court was not the proper forum to settle a dispute between a landlord and a subtenant. The opinion stated:

> It is the well-settled law in this state, and of many other states, that it is an abuse of the penal statute relating to criminal trespass to try disputed rights in real property. (Citations omitted) It is the opinion of the court therefore that the verdict [finding the defendant guilty of criminal trespass] is contrary to law. 132 N.E. at 740.

In *State v. Larason*, 143 N.E.2d 502 (Ct. Common Pleas Ohio 1956), the same rule was stated with regard to a criminal trespass charge against the defendant for parking his car on the plaintiff's land, where the defendant believed that he had an easement to park there. The court stated that a criminal trial is not suitable for determining property rights, because criminal trespass statutes have generally been construed strictly and do not afford a substitute for other adequate civil remedies. The court added that it is an abuse of a penal statute relating to criminal trespass to use it to try disputed rights in real property. Id. at 503–504.

An Illinois case which reaches the same result is *People v. Miller*, 344 Ill.App. 574, 101 N.E.2d 874 (Ill.App.1951). There the

defendant was charged and was adjudged guilty of criminal trespass, where he was also on the land in question under the claim of right. The court found that the evidence did not prove the defendant guilty beyond all reasonable doubt and it stated that if the conviction were allowed to stand on the facts disclosed by the record it would settle a dispute over title and right of possession of land. A penal statute, it continued, can't be used to try disputed rights of title. The court said that it was well settled law that it is an abuse of the penal statute relating to criminal trespass to so use it.

In *People v. Johnson*, 16 Mich.App. 745, 168 N.W.2d 913 (1969), the court noted the distinction between when a prosecution under the criminal trespass statute is and is not an appropriate vehicle for resolution of the controversy at issue. The court stated that the requirement of an intent to remain upon the lands of another without lawful authority causes the criminal trespass statute to be inapplicable in determining the questions of title or right to possession where the act which was the subject of the prosecution was a good faith one under a claim of right.

There can be no question but that the defendant in this case, Mr. Miller, was crossing the land under a claim of right to use it, and the long-standing practice makes the prosecution of this case less applicable than in the cases cited above. It was obvious to the trial judge, as well, that the criminal action was not appropriate. When the trial court sentenced the defendant he said "I don't regard you as a criminal in this regard, I want you to know that. I think you are a fine, good citizen." Having found Miller's claim to an easement or a license unsupported in the law, the court convicted Miller of a crime, even though the court recognized that the case did not involve criminal activity. But in such a situation, a criminal conviction is contrary to the law.

In *Jennings v. Shuman*, 567 F.2d 1213, 1220 (3rd Cir. 1977), the court stated that "[a]buse of process is by definition a denial of procedural due process." Under the circumstances of this case, the above quote is particularly relevant.

The government stresses the fact that ownership of the property is undisputed. However, the government does not consider that for fifty years the Millers have claimed a legal right of access on the property, and that for fifty years the Millers have been using the road in question to get to their property. It is not a matter of who owns the property. The dispute is over the exercise of a right to enter on the property to get to Miller's lands. In order for the court to determine whether Miller's right is supported by law, it is going to have to resolve the relative rights. The property dispute should be considered in civil proceedings. The United States has noted in its brief that the defendant placed great emphasis on the concern of the trial court and the parties to resolve the dispute between Miller and the Indians before court action was necessary. The United States continues that "no such arrangement or resolution was reached, thus the case resulted in a criminal prosecution of the defendant." The United States had itself recognized that the sole reason for bringing this prosecution was to resolve the property dispute. However, the United States should have brought a civil action. We are of the opinion that it is an abuse of process when a legal procedure is perverted to accomplish an ulterior purpose for which it was not designed. *See* Prosser, Law of Torts (4th Ed.), page 856 (1971). *See also, Tappen v. Ager*, 599 F.2d 376 (10th Cir. 1979). *See also* 1 Harper and James, The Law of Torts, § 4.9, p. 332 (1956). The authors there state that abuse of process consists of the prosecution "attempting to misuse a legitimate process, properly issued on an appropriate occasion, in order to accomplish some collateral object which itself might even be legitimate, but for the accomplishment of which the process in question was not intended to be used."

In the case at bar the United States used criminal trespass on behalf of the Indians with the intent of resolving the underlying dispute. The criminal trespass statute was never designed to resolve civil property dis-

putes. It has an unsettling affect on the parties, as well.

Because of its inappropriateness, we decline to review the conviction. Instead, we remand the case; however, with directions to the trial court to vacate the conviction and dismiss the charge. This action is taken on the basis of the reasons stated above.