NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

OCT 20 2017

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

WILLIAM D. BURGAN and LYNETTE
BURGAN,

Plaintiffs-Appellees,

 v.

ALEXANDER NIXON and THOMAS
RIEGER,

Defendants-Appellants,

 and

CARBON COUNTY,

Defendant.

No.    16-35755

D.C. No. 1:16-cv-00061-CSO

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Montana
Carolyn S. Ostby, Magistrate Judge, Presiding

Argued and Submitted October 6, 2017
Seattle, Washington

Before:  WARDLAW, CLIFTON, and OWENS, Circuit Judges.

Alexander Nixon and Thomas Rieger appeal from the district court's denial

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

of their motion to dismiss William and Lynette Burgan's Fourth, Fifth, and Fourteenth Amendment claims against them. As the parties are familiar with the facts, we do not recount them here. We dismiss the appeal in part, reverse the district court's order in part, and remand.

1. This court has jurisdiction under 28 U.S.C. § 1291 to review the district court's denial of qualified and absolute immunity to Mr. Nixon and Mr. Rieger as to the Burgans' federal constitutional claims. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). We lack jurisdiction to consider the viability of the Burgans' state-law claims. *See Doe v. Petaluma City Sch. Dist.*, 54 F.3d 1447, 1449 (9th Cir. 1995).

2. Mr. Nixon and Mr. Rieger are entitled to qualified immunity on the Burgans' Fourth, Fifth, and Fourteenth Amendment claims. The Burgans have identified no law clearly establishing that the issuance of a trespass citation constitutes a property deprivation in violation of the Fourth, Fifth, or Fourteenth Amendments. *See Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) ("The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009))). For qualified-immunity purposes, "[t]he dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). Thus, to defeat a

2

qualified-immunity defense, a plaintiff must generally identify a precedent in which an official, engaging in similar particular conduct, was held to have violated the asserted federal right. *White v. Pauly*, 137 S. Ct. 548, 552 (2017); *S.B. v. Cty. of San Diego*, 864 F.3d 1010, 1015–16 (9th Cir. 2017). What matters here is not whether the Burgans' *easement* was clearly established, but whether the Constitution's protections of that easement against *specific types of government conduct* would have been obvious to a reasonable official at the time of Mr. Burgan's trespass citation.

At that time—in August 2013—it was clearly established that a Fourth Amendment "seizure" occurs when there is some meaningful interference with an individual's possessory interest in his property. *See Soldal v. Cook County*, 506 U.S. 56, 61 (1992). It was also clearly established that the government may not take private property for private use, *see Armendariz v. Penman*, 75 F.3d 1311, 1320 (9th Cir. 1996), *overruled in part on other grounds by Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851, 856 (9th Cir. 2007), and that the government must give property owners notice and a hearing before depriving them of their property, *see United States v. James Daniel Good Real Property*, 510 U.S. 43, 48 (1993).

But the Supreme Court has instructed this court "not to define clearly established law at a high level of generality." *al-Kidd*, 563 U.S. at 742. "The

general proposition . . . that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *Id*. Here, the Burgans have not met their burden of identifying law clearly establishing that a trespass citation temporarily preventing access to an easement constitutes a "meaningful interference" with a possessory property interest, a taking for the benefit of the servient estate owner, or a property deprivation lacking due process. *Cf. Soldal*, 506 U.S. at 61; *Armendariz*, 75 F.3d at 1320; *James Daniel Good*, 510 U.S. at 48.

The case most nearly on point, *United States v. Miller*, 659 F.2d 1029 (10th Cir. 1981), found "an abuse of process" where the government initiated a criminal trespass prosecution for the purpose of resolving a property dispute. *Id*. at 1033. Here, by contrast, the trespass citation was issued for the purpose of keeping the peace pending resolution of the property dispute in the civil courts, and so this is not a case where "a legal procedure [was] perverted to accomplish an ulterior purpose for which it was not designed." *Id*. (citations omitted).

The Burgans do allege that Mr. Nixon and Mr. Rieger acted in bad faith to benefit their friend, the Burgans' neighbor. In this procedural posture, we accept as true all well-pleaded allegations in the complaint and construe them in the light most favorable to the Burgans. *See Padilla v. Yoo*, 678 F.3d 748, 757 (9th Cir. 2012). But even well-pleaded allegations of bad faith do not automatically defeat

4

qualified immunity; rather, the immunity analysis asks whether the defendant's conduct violates clearly established rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 815–20 (1982) ("[B]are allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery."). A right is clearly established when its contours are so clear that "every 'reasonable official would have understood that what he is doing violates that right.'" *al-Kidd*, 563 U.S. at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

We do not think that "every reasonable official" would have understood that he was violating the Fourth, Fifth, or Fourteenth Amendments by issuing a trespass citation to Mr. Burgan under the circumstances of this case. Even assuming that the Burgans' easement was clearly established in August 2013, whether Mr. Burgan had exceeded the scope of that easement remained murky. *See Laden v. Atkeson*, 116 P.2d 881, 884–85 (Mont. 1941). Additionally, Mr. Rieger and Mr. Nixon had been informed that the property dispute between the Burgans and their neighbor was escalating, that Mr. Burgan had cut the lock on his neighbor's gate, and that there was going to be "trouble." Both Mr. Burgan and the neighbor had called on Mr. Nixon and Mr. Rieger for help managing the dispute. Rather than attempting to resolve the legal questions himself, Mr. Rieger consulted with Mr. Nixon and relied on his legal advice in deciding to issue the trespass citation.

Officers are entitled to rely on such legal advice, and "while it will not automatically insulate an officer from liability, 'it goes far to establish qualified immunity.'" *Ewing v. City of Stockton*, 588 F.3d 1218, 1231 (9th Cir. 2009) (quoting *Kijonka v. Seitzinger*, 363 F.3d 645, 648 (7th Cir. 2004)).

In this context, issuance of the trespass citation was not "plainly incompetent" or a knowing violation of the law. *See Mullenix*, 136 S. Ct. at 308 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Accordingly, Mr. Nixon and Mr. Rieger are entitled to qualified immunity as to the Burgans' federal constitutional claims.

**DISMISSED IN PART, REVERSED IN PART, AND REMANDED.**
Each party shall bear its own costs.

Burgan v. Nixon, No. 16-35755

WARDLAW, Circuit Judge, concurring in part[1] and dissenting in part:

Unlike my colleagues, I believe that—at the very least—it is clearly established that a law enforcement officer violates due process when he intervenes to settle a private property dispute by threatening to arrest one of the disputing parties. *See Fuentes v. Shevin*, 407 U.S. 67, 80–82, 91 (1972); *Marcus v. McCollum*, 394 F.3d 813, 824 (10th Cir. 2004); *Abbott v. Latshaw*, 164 F.3d 141, 147–49 (3d Cir. 1998).

On this motion to dismiss, taking the allegations in the complaint as true and construing them in the light most favorable to the Burgans, Nixon and Rieger violated that clearly established right. Their actions were not, as the majority suggests, a neutral preservation of the status quo. Indeed, the status quo was one in which Burgan had a prescriptive right to cross his neighbor's land—as Nixon and Rieger should have been aware. The officials' intervention deprived Burgan of that right, effectively ousting him from his easement for eighteen months. By taking it upon themselves to adjudicate Burgan's property rights in their "curbside courtroom," *Abbott*, 164 F.3d at 149, Nixon and Rieger violated Burgan's clearly established due process rights.

---

[1] I concur in the majority's conclusion that the court lacks appellate jurisdiction over the Burgans' state-law claims.

If the officials were worried about escalation and the potential for violence, other tools—besides a de facto adjudication of what they knew to be disputed property rights—were available to them.  They could have warned or charged Burgan (or Brien) (or both) with disorderly conduct or intimidation.  *See* Mont. Code Ann. §§ 45-8-101, 45-5-203.  Had there been evidence of negligent endangerment through unsafe driving on the access road, that charge might have been appropriate.  *See* Mont. Code Ann. § 45-5-208.  And they could have instructed Brien to seek a declaratory judgment that his property was not encumbered by an easement.[2]  What they could not do was take it upon themselves to settle the dispute.  *See Abbott*, 164 F.3d at 149 ("At the heart of *Fuentes* is the principle that it is not for law enforcement officers to decide who is entitled to possession of property."); *United States v. Miller*, 659 F.2d 1029, 1033 (10th Cir. 1981) (finding a violation of procedural due process where the government adjudicated easement rights through a criminal trespass prosecution).

In the end, a reasonable officer in Nixon and Rieger's shoes—that is, in possession of notarized affidavits from multiple disinterested and knowledgeable third parties stating that Burgan held a prescriptive easement across Brien's property—would have known that it was unlawful to charge Burgan with criminal

---

[2] It is no wonder that Brien did not do so—that would have only hastened the state court's subsequent confirmation of Burgan's easement.

trespass and threaten him with arrest for using that easement. I would affirm the district court's denial of qualified immunity, at least with regard to the procedural due process claim. Therefore, I respectfully dissent.