**David GORDON, individually and as father and next friend of Adam Gordon, Plaintiff–Appellant,**

v.

**Dennis DEGELMANN, et al., Defendants–Appellees.**

No. 93–3463.

United States Court of Appeals, Seventh Circuit.

Argued April 13, 1994.

Decided July 12, 1994.

Rehearing and Suggestion of Rehearing En Banc Denied Aug. 22, 1994.

Paul R. Armstrong (argued), Chicago, IL, for plaintiff-appellant.

John B. Murphey (argued), Simone M. Boutet, Rosenthal, Murphey, Coblentz & Janega, Chicago, IL, for Dennis Degelmann.

Jeffrey E. Schiller (argued), Michael F. Braun, Mary A. Kerr, Schuyler, Roche & Zwirner, Chicago, IL, for Officer Misrac, Village of Skokie and Barbara Meyer.

Before CUMMINGS, EASTERBROOK, and MANION, Circuit Judges.

EASTERBROOK, Circuit Judge.

Laura Moehlman and David Gordon moved in together. Title to the house was in her name, but he put up some of the money. In October 1991 the relationship collapsed. Moehlman complained to the Skokie police that Gordon was threatening her and asked for protection. She told the police that she owned the house and that Gordon had refused to leave. She provided evidence to support her claim of ownership; Gordon claimed to be part owner but could furnish no evidence of this to the police.

After consulting with an assistant state's attorney, Dennis Degelmann told other officers assembled for a roll call on October 31, 1991, that, if Moehlman again complained, Gordon lawfully could be arrested for criminal trespass unless he left voluntarily. Moehlman called that night, saying that she was terrified because Gordon had again threatened her. Officer Misrac went to the house, and, when Gordon could not produce evidence of ownership and refused to leave, arrested him for trespassing. He was soon released on bond. The next day Moehlman obtained from the circuit court an emergency protective order prohibiting Gordon from entering the house. The criminal charges were dismissed on November 12, however, because in Illinois a person residing in a dwelling under a claim of right is entitled to the judicial hearing afforded by the forcible entry and detainer statute before he may be removed as a trespasser. *People v. Evans*, 163 Ill.App.3d 561, 114 Ill.Dec. 662, 516 N.E.2d 817 (1st Dist.1987). The judge also modified the protective order, permitting Gordon limited access to the house. Gordon then turned the tables, suing Degelmann, Misrac, Barbara Meyer (the Village's Corporation Counsel), and the Village of Skokie itself. Gordon contends that the arrest violated the fourth amendment, making the defendants liable under 42 U.S.C. § 1983 and principles of state law. All four defendants have prevailed, at different times and for different reasons.

1. Meyer received summary judgment on the ground that she had nothing to do with the arrest. 1993 WL 181456, 1993 U.S.Dist. LEXIS 7214 (N.D.Ill.). She did not detain Gordon, order Misrac to do so, or render a legal opinion that the arrest would be lawful. Gordon replies that she knew that the police were contemplating the arrest and could have done something. Maybe, but

Meyer was outside the chain of command. The Corporation Counsel's responsibility encompasses only civil matters. Police in Illinois receive their legal advice about investigations and arrests from the State's Attorney, the county criminal prosecutor. 55 ILCS 5/3–9005; *Ware v. Carey,* 75 Ill.App.3d 906, 31 Ill.Dec. 488, 394 N.E.2d 690 (1st Dist.1979). Degelmann spoke with an assistant state's attorney, and Misrac arrested Gordon under a state law rather than a Village ordinance. Despite the holding of *Burns v. Reed,* 500 U.S. 478, 492–96, 111 S.Ct. 1934, 1942–44, 114 L.Ed.2d 547 (1991), that a prosecutor lacks immunity for giving bad advice to the police, Gordon ignored the prosecutor and sued the Corporation Counsel instead. The Constitution does not require all public employees to intercede, outside their own bureaucratic hierarchies, on behalf of persons whose rights are in jeopardy. Meyer keeps the judgment in her favor.

■ 2. Degelmann relayed to fellow officers the conclusion of the assistant state's attorney that the law permitted them to arrest Gordon for trespass. When Misrac arrested Gordon, Degelmann was not present. The district court instructed the jurors that Gordon could prevail against Degelmann under § 1983 for a violation of the fourth amendment only if "defendant Degelmann arrested plaintiff". Needless to say, the jury returned a verdict in Degelmann's favor.

The instruction was incorrect. One who directs or assists an unlawful arrest may be liable. *Kilbourn v. Thompson,* 103 U.S. 168, 200, 26 L.Ed. 377 (1880). Gordon would have had a difficult time showing that Degelmann induced Misrac to arrest Gordon; Degelmann was not Misrac's superior and played little role except as the intermediary to the prosecutor. Still, the district court's instruction prevented the jury from asking the right question.

■ None of this does Gordon any good, however, for he did not draw the court's attention to the error. Apparently Gordon's lawyer thought it sufficient to propose his own instruction, which was argumentative and misleading. When the district judge indicated that she preferred the defendants' proposed instructions, Gordon's lawyer did

not point out the problem they contained. As we have recently reiterated, tendering one's own instruction does not satisfy Fed. R.Civ.P. 51, which provides: "No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." See *Hebron v. Touhy,* 18 F.3d 421, 424 (7th Cir. 1994). Rule 51 requires the parties to draw the court's attention to problems so that they may be corrected before the jury begins to deliberate. Gordon did not flag this issue and, because courts may not employ the plain error doctrine to review civil jury instructions, *Deppe v. Tripp,* 863 F.2d 1356, 1361–62 (7th Cir.1988), the verdict in Degelmann's favor must stand.

3. The jury found Skokie liable to Gordon under state law and awarded a total of $17,-100 in damages. Because of *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), Gordon omitted any constitutional claim against the Village, whose presence in the litigation therefore depends on the supplemental jurisdiction created by 28 U.S.C. § 1367(a). After the verdict the district court granted judgment as a matter of law, see Fed.R.Civ.P. 50(b), in the Village's favor. 1993 WL 388679, 1993 U.S.Dist. LEXIS 13755. Because under Illinois law "[a] local public entity is not liable for injury resulting from an act or omission of its employee where the employee is not liable", 745 ILCS 10/2–109, the judge reasoned that the jury's verdict in Degelmann's favor was conclusive in favor of the Village. You can't have vicarious liability without primary liability.

■ The district court did not explain why it started from the verdict absolving Degelmann. Why not the other way 'round? One could say that because the jury awarded damages against the Village, it must have meant to hold Degelmann liable. As the district court perceived things, the jury's verdicts are inconsistent. There is no priority among inconsistent verdicts. *American Casualty Co. v. B. Cianciolo, Inc.,* 987 F.2d 1302, 1305 (7th Cir.1993). If the problem is

not caught before the jury disbands (and no one noticed this conflict until post-trial motions), the proper thing to do is to hold a new trial with respect to all affected parties. *Gallick v. Baltimore & Ohio R.R.*, 372 U.S. 108, 119, 83 S.Ct. 659, 666, 9 L.Ed.2d 618 (1963); *Bates v. Jean*, 745 F.2d 1146, 1152 (7th Cir.1984); *Will v. Comprehensive Accounting Corp.*, 776 F.2d 665, 677–78 (7th Cir.1985).

■ Perhaps, however, there is no inconsistency. Although the Village cannot be liable unless one of its employees violated Gordon's rights, that employee need not be Degelmann. How about Misrac? The district court granted judgment to Misrac on account of official immunity. 1993 WL 286470, 1993 U.S.Dist. LEXIS 10350. Skokie does not benefit from the immunity that protects its employees, so it is potentially answerable on the theory that Misrac is "liable" (in the sense of culpable) even though Misrac cannot be made to pay damages. And if we agree with Gordon's argument that the district court erred in holding Misrac immune (a subject discussed below), then it becomes doubly clear that the Village cannot prevail as a matter of law. Gordon adds that another, unidentified officer aided Misrac in the arrest. This officer might be liable for false arrest. Illinois does not require that the public employee be ordered to pay damages, just that the employee *be* liable, and "it is sufficient for recovery against a public entity to prove that an identified employee would be liable even though that employee is not named a defendant in the action." *McCottrell v. Chicago*, 135 Ill.App.3d 517, 520, 90 Ill.Dec. 258, 261, 481 N.E.2d 1058, 1060 (1st Dist.1985).

■ Gordon's principal theory, however, is that the Village's liability may be based on *Degelmann's* tort. That contention, which depends on the contention that we should set aside the jury's verdict in Degelmann's favor, is unavailing in light of the preceding discussion. What is more, even the possibility of holding the Village liable for Misrac's acts (or those of his unidentified colleagues) would not assist Gordon. A municipality in Illinois is liable only for the wilful and wanton acts of its employees. 745 ILCS 10/2–202. Whatever labels one may apply to the arresting officers' conduct, based as it was on a combination of facts described by the recipient of threats, advice from the prosecutor, and on-the-spot investigation into Gordon's claim of ownership, "wilful and wanton" is not among them. Misrac and his companions may have acted without probable cause (an objective standard) and may lack immunity, but their decisions were made after gathering both factual and legal information. Their alternative, forcing Moehlman to flee from her own home to escape her tormentor, was not so plainly compelled by the Constitution and state law that the course of removing Gordon can be called "wilful and wanton." We therefore agree with the district judge that Skokie is entitled to judgment as a matter of law, although not for the reason the judge gave. See *Massachusetts Mutual Life Insurance Co. v. Ludwig*, 426 U.S. 479, 96 S.Ct. 2158, 48 L.Ed.2d 784 (1976); *Jordan v. Duff & Phelps, Inc.*, 815 F.2d 429, 439 (7th Cir.1987).

■ 4. When concluding that Misrac is entitled to qualified immunity, the district judge noted Misrac's "good faith reliance on the law as explained by Degelmann". Until 1982 immunity turned on subjective issues such as good faith and intent; since *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the standard for immunity has been objective, like the "reasonableness" component of the fourth amendment itself. See *Florida v. Jimeno*, 500 U.S. 248, 250–51, 111 S.Ct. 1801, 1803–04, 114 L.Ed.2d 297 (1991); *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989); *Maryland v. Macon*, 472 U.S. 463, 470–71, 105 S.Ct. 2778, 2782–83, 86 L.Ed.2d 370 (1985); *Scott v. United States*, 436 U.S. 128, 136–38, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978). Courts ask whether the unlawfulness of the act should have been apparent to the public employee under the law as it *actually* stood at the time. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Misunderstandings of the law, even those attributable to reliance on information from fellow officers, are not pertinent. *Dellums v. Powell*, 566 F.2d 167, 185 (D.C.Cir.1977).

One could recast the argument for immunity by saying that police often act on each other's instructions. An all points bulletin or wanted flyer induces an officer to arrest someone about whom he knows nothing beyond the instruction to make an arrest. Whether the arrest is lawful depends on the information available to the police collectively; if the person issuing the radio bulletin or authorizing the wanted poster had probable cause to do so, the facts need not be present to the mind of the person making the arrest. *United States v. Hensley,* 469 U.S. 221, 231, 105 S.Ct. 675, 681, 83 L.Ed.2d 604 (1985); *Whiteley v. Warden,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); *United States v. Edwards,* 885 F.2d 377 (7th Cir.1989); Wayne R. LaFave, 2 *Search and Seizure* § 3.5(b) (2d ed. 1987 & 1993 Supp.). Cf. *United States v. De Leon–Reyna,* 930 F.2d 396 (5th Cir.1991) (en banc). Fear of personal liability if the bulletin or poster turns out to be erroneous would interfere with valuable institutions of law enforcement. Giving the arresting officer immunity would shift the liability back to the person who issued the erroneous instructions (here, the prosecutor), simultaneously protecting all of the interests involved.

We need not grapple with the question whether this perspective on immunity is correct, and, if so, whether it protects Misrac, because we conclude that Misrac did not violate the fourth amendment and therefore does not need immunity. This would be pellucid if the Illinois law of trespass were as the prosecutor believed it to be. The Skokie police received a complaint from Moehlman that Gordon was a squatter in Moehlman's house. They verified that Moehlman was the record owner; they asked Gordon for proof of an interest (for example, a lease or canceled checks showing payments toward the mortgage), and he produced none. Police may act on a victim's complaint; if the evidence conflicts, they may let the courts sort out who is telling the truth. *Hebron,* 18 F.3d at 423; *Gramenos v. Jewel Companies, Inc.,* 797 F.2d 432, 437–41 (7th Cir.1986). The only weak link is the law. Illinois has a forcible entry and detainer statute in addition to a trespass statute, and its courts have held that, when the two overlap, the terms of the former apply. This has long been clear when the occupant has a formal lease. *People v. Miller,* 344 Ill.App. 574, 581–82, 101 N.E.2d 874, 877 (1st Dist.1951). *People v. Evans* extended this principle to cover a situation in which the tenant lacked a signed lease. We know from *People v. Brown,* 150 Ill.App.3d 535, 103 Ill.Dec. 809, 501 N.E.2d 1347 (3d Dist.1986), that the criminal trespass law may be applied to a boyfriend who moved in, later moved out, and then returned forcibly, but Gordon had refused to move out, which implies that *Evans* was the controlling decision.

Where to draw the line between *Evans* and *Brown* is, however, a question of Illinois law rather than of the fourth amendment. That Misrac violated state law does not mean that he transgressed against the Constitution of the United States. Scarcely a month goes by that the Supreme Court does not reject another permutation on the theme that, by violating state law, state employees violated the Constitution. *Romano v. Oklahoma,* — U.S. —, —, 114 S.Ct. 2004, 2011, — L.Ed.2d — (1994), is the most recent. See also, e.g., *Gilmore v. Taylor,* — U.S. —, — – —, 113 S.Ct. 2112, 2117–18, 124 L.Ed.2d 306 (1993); *Estelle v. McGuire,* 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), and others collected in *Archie v. Racine,* 847 F.2d 1211, 1216 (7th Cir.1988) (en banc). As a rule, federal courts assess constitutional claims by assuming that the state wants its employees to behave just as they did and asking whether federal rules permit the state to achieve this objective. There may be exceptions, of which *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is a leading candidate. By adopting a rule that the evidence must support state criminal convictions, the Court opened the way for federal judges to inquire whether state courts correctly understand the elements of the offenses the state legislatures have defined. Compare *Bates v. McCaughtry,* 934 F.2d 99 (7th Cir.1991), with *Fagan v. Washington,* 942 F.2d 1155 (7th Cir.1991). Perhaps there is a parallel under the fourth amendment. Suppose the police were to arrest an economist for predicting industrial output without a license. Such a step could

be thought to offend the fourth amendment even though the state would be free to license economists, just as it licenses lawyers, accountants, and hairdressers.

Illinois has a criminal trespass law, however, so this hypothetical need not detain us. Read without reference to the forcible entry and detainer statute, the criminal trespass act forbids exactly the conduct in which Gordon appeared (to Misrac) to be engaged. What the forcible entry and detainer law adds is a prior *procedure*: a judicial hearing to determine the person's entitlement to remain on the property. Federal judges do not enforce state-created procedures in the name of the Constitution. *Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983). The fourth amendment has its own procedural requirements: probable cause to make an arrest, a warrant to make an arrest entry, and a subsequent hearing to determine whether detention shall continue. *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Riverside County v. McLaughlin,* 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). Gordon does not contend that Misrac omitted any constitutionally necessary step; in particular, he does not contend that an arrest warrant was essential. Gordon came to the door; Misrac later entered the house with Moehlman's permission, obviating any need for a warrant.

State law neither adds to nor subtracts from these constitutional rules. "In determining whether there has been an unreasonable search and seizure by state officers, a federal court must make an independent inquiry.... The test is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed." *Elkins v. United States,* 364 U.S. 206, 223–24, 80 S.Ct. 1437, 1447, 4 L.Ed.2d 1669 (1960). See also *United States v. Sagaribay,* 982 F.2d 906 (5th Cir.1993); *United States v. Sutherland,* 929 F.2d 765 (1st Cir. 1991). Contra, *United States v. Mota,* 982 F.2d 1384 (9th Cir.1993). Because Misrac followed the procedures the Constitution prescribes for making arrests, his failure to afford Gordon additional procedures established by state law does not matter—not, at least, to a claim under the fourth amendment and § 1983, the only theory Gordon pursues against Misrac. *Soldal v. Cook County,* —— U.S. ——, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992), is not to the contrary. The question before the Supreme Court was whether taking away a mobile home is a "seizure" under the fourth amendment; the Justices did not discuss whether a seizure becomes "unreasonable" when officers fail to follow state law. We hold that failure to afford a hearing required by state law, but not by the fourth amendment, violates only that state law.

AFFIRMED.