# In the
# United States Court of Appeals
## For the Seventh Circuit
———————

Nos. 04-2657 & 04-2876

DOLORES DELOUGHERY,

*Plaintiff-Appellee,*

*v.*

CITY OF CHICAGO,

*Defendant-Appellant.*

———————

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 2722—**Matthew F. Kennelly**, *Judge.*

———————

ARGUED JUNE 1, 2005—DECIDED SEPTEMBER 7, 2005

———————

Before BAUER, RIPPLE and KANNE, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Dolores Deloughery brought this action against her employer, the City of Chicago ("the City"), after the City failed to promote her to the rank of captain within the Chicago Police Department ("CPD"). Ms. Deloughery contended that the City had retaliated against her, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., for exercising rights protected under Title VII and the First Amendment, *see* 42 U.S.C. § 1983. The jury returned a verdict for Ms. Deloughery on the Title VII claim but against her on the First Amendment claim. The jury awarded Ms. Deloughery damages, includ-

ing $250,000 for emotional distress. On the City's motion, the district court reduced the compensatory damages to $175,000; however, the court declined to grant a new trial on damages. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

# I
# BACKGROUND

## A. Facts

Ms. Deloughery, who is Hispanic, was hired by CPD in 1982. In 1995, she attained the rank of lieutenant. Following her promotion to lieutenant, Ms. Deloughery was assigned to work with CPD's community policing program. She did this work in a position at the police training academy and was assigned additional responsibilities at the academy as time passed.

In 1998, Ms. Deloughery was accused of having interfered in the physical fitness tests being completed by her sister who was applying to work for CPD. After the incident, she was moved from her position at the academy to a position as a lieutenant in the 18th district. Later, she was reassigned to be commanding officer of Area 5 youth investigations. In February 2000, Ms. Deloughery was transferred from her position as commanding officer for Area 5 youth back to a patrol position.

Later in 2000, Ms. Deloughery filed an internal complaint of sex and national origin discrimination (the "internal complaint"). Still later in 2000, Ms. Deloughery filed charges of discrimination (the "2000 IDHR charges") with the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC"). She claimed that her February 2000 transfer to a patrol

position resulted from sex and national origin discrimination. She also claimed that CPD had retaliated against her for filing the internal complaint by continuing to refuse to promote her.

Throughout most of her employment with CPD, Ms. Deloughery was a board member of the Chicago Police Women's Association ("CPWA"), a group organized to voice the concerns of women working within the CPD. In 1998 and 1999, CPWA board members, including Ms. Deloughery, met with CPD Superintendent Terry Hillard. During both meetings, Ms. Deloughery's role was to bring up the lack of women in the upper ranks of the CPD. Also in 1999, she and others approached Hillard to inform him that some CPWA members believed that they were being penalized for participating in the group. CPWA members had meetings with Hillard after Ms. Deloughery filed the internal complaint and the 2000 IDHR charges, but she did not participate in those meetings.

In July 2000, CPD announced that it would accept applications from lieutenants for promotion to captain; Ms. Deloughery submitted an application. In the written component of her application, Ms. Deloughery emphasized her leadership in the CPWA. Applicants for the captain position also underwent a series of interviews with CPD district commanders.

After interviewing candidates, the district commanders each submitted to Hillard a list ranking candidates according to their suitability for promotion. Hillard, however, was free to exercise full discretion with respect to promotions, without being constrained by the district commanders' recommendations. Hillard testified that he made promotion decisions based on the candidates' applications, the candidates' employment files, the district commanders' lists and his own personal knowledge of the candidates. He claimed

to be unaware of Ms. Deloughery's internal complaint and her 2000 IDHR charges when he made the promotion decisions.

In December 2000, CPD promoted thirty-three candidates to captain. In January 2001, CPD promoted thirty-five more candidates to captain. Ms. Deloughery was not promoted in either group. After the CPD made the first two rounds of promotions, Ms. Deloughery filed charges with IDHR and EEOC claiming that she had been subject to retaliation. Marie Johnston, another CPD employee who was not promoted to captain, also filed charges making the same allegation as Ms. Deloughery.

## B. District Court Proceedings

After securing a right to sue letter from the EEOC, Ms. Deloughery and Johnston filed this action. Because the City's appeal concerns only Ms. Deloughery's claims, we have focused on Ms. Deloughery and shall refer to Johnston only when necessary.

Ms. Deloughery's first amended complaint alleged two counts.[1] Count I (the "Title VII claim") alleged that the City's failure to promote her to captain constituted retaliation for filing charges of discrimination and for speaking out against discrimination within CPD, in violation of Title VII. *See* 42 U.S.C. § 2000e-3(a). Count II (the "First Amendment claim") alleged that the City had violated Ms. Deloughery's rights under the First Amendment when Hillard failed to promote her in retaliation for her activities opposing discrimination. *See* 42 U.S.C. § 1983.

---

[1]   Johnston's complaint contained the same two counts.

The case was tried to a jury. Ms. Deloughery testified that she was "devastated" by not being promoted to captain. Tr.II at 152. For instance, she claimed that she "fell down" when she learned that she was not among the first group to be promoted. *Id.* at 148. Ms. Deloughery also stated:

> [I]t is almost like learning that there is no Santa Clause [sic] anymore. . . . I thought if you worked hard and did the right thing and tried to improve the department and give back and mentor and all of that, that you would be rewarded with continuous promotion. And I based it on the fact that I had steadily moved up in my career. Now, all of a sudden, I wasn't good enough to be promoted.

*Id.* at 152-53.

Ms. Deloughery also testified about the obstacles that she had overcome in her life: "It was kind of tough growing up [as one of eleven children], and I was very proud of the fact that I was able to finish college . . . . [My family] knew how much I had put of myself into this job in spite of the fact that I had children . . . ." *Id.* at 152. She also testified that the events were "hard on" her parents, including her father, "a retired police officer with failing health." *Id.* Ms. Deloughery admitted that she had never sought the help of a psychiatrist, psychologist or other mental health professional for treatment of the distress she experienced as a result of not being promoted. *Id.* at 166.

Sergeant Deborah Pascua, who had worked with Ms. Deloughery in CPWA, testified that not being promoted to captain had had "a demoralizing impact" on Ms. Deloughery. *Id.* at 244. Sgt. Pascua also testified that, at the time the CPD made the promotion decisions, Ms. Deloughery "had small children, and she was changed numerous places, numerous shifts, and she had a lot—she

was going through a divorce. So she had major child care issues to deal with, with this changing." *Id.*

At the close of the evidence, the trial court instructed the jury as follows:

> You must give separate consideration to each plaintiff and each of her claims.
>
> First, each of the plaintiffs contends that her employer, the City of Chicago, acting through defendant Hillard, retaliated against them for filing charges with the [EEOC] and the [IDHR] and/or for complaining about and opposing discrimination within the [CPD].
>
> Second, each of the plaintiffs contends that defendant Hillard denied her promotion to the position of captain in retaliation for exercising her free speech rights.
>
> . . . .
>
> To prevail on her first claim, the particular plaintiff whose claim you are considering must prove . . . that the City of Chicago determined not to promote her to captain in retaliation for filing charges with the [EEOC] and the [IDHR] and/or for complaining about and opposing discrimination within the [CPD].
>
> To decide this question, you must determine whether the City would have promoted the plaintiff if she had not filed charges or complained about discrimination but everything else was the same.
>
> On the second claim—that is the claim against Mr. Hillard for denial of free speech rights, retaliation for exercising free speech rights. On the second claim, the particular plaintiff whose claim you are considering must prove . . . that her exercise of her right of free speech was a substantial or motivating factor in

> Hillard's decision not to promote the plaintiff to captain. If the plaintiff proves this, she must prevail on this claim unless Hillard proves . . . that he would have taken the same action even in the absence of the plaintiff's exercise of her right of free speech. . . .
>
> It is undisputed that activity in opposing discrimination of [sic] public employment is protected by the constitutional right of free speech.

Tr.IV at 596-98.

The jury returned a verdict for Ms. Deloughery on the Title VII claim and found against her on the First Amendment claim. The jury also awarded Ms. Deloughery damages in the following amounts: $18,000 in back pay; $282,000 in front pay; and $250,000 in compensatory damages for mental and emotional suffering.[2]

After trial, the City moved for judgment as a matter of law, claiming that the jury had returned inconsistent verdicts. The district court denied the motion on the ground that judgment as a matter of law is not the appropriate remedy for alleged inconsistent jury verdicts. *See Gordon v. Degelmann*, 29 F.3d 295, 298 (7th Cir. 1994) ("There is no priority among inconsistent verdicts.").

Later, the City filed a motion for a new trial, again asserting that the jury had returned inconsistent verdicts on Ms. Deloughery's claims, and for remittitur, claiming that the award of compensatory damages was excessive. The district court denied the motion for a new trial on the ground that the jury's verdicts on Ms. Deloughery's claims were not inconsistent. The district court observed that its

---

[2] The jury also returned verdicts against Johnston on both her Title VII and her First Amendment claim.

instructions to the jury on the Title VII claim permitted the jury to find for Ms. Deloughery

> if it found the City had retaliated against her for filing charges with the [EEOC] and the [IDHR], *and/or* for complaining about and opposing discrimination within the [CPD]. . . . By contrast, the instructions on the § 1983 [First Amendment] claim required a finding that Deloughery's exercise of her free speech rights was a substantial or motivating factor in Hillard's decision not to promote her . . . .

R.121 at 3 (emphasis in original).

On the other hand, the district court reasoned, "the instructions on the [First Amendment] claim did not permit, or at least did not appear to the jury to permit, a verdict in Deloughery's favor on that claim based on retaliation for filing [EEOC] and IDHR charges." *Id.* at 4. The district court concluded that the jury rationally could have found for Ms. Deloughery on the Title VII claim and against her on the First Amendment claim.

Turning to the City's claim that the jury's award of $250,000 for emotional distress was excessive, the court relied extensively on *Tullis v. Townley Engineering & Manufacturing Co., Inc.*, 243 F.3d 1058 (7th Cir. 2001). The court noted that "it is within the jury's domain to assess the credibility of witnesses," *id.* at 1069, and that "[a]n award for nonpecuniary loss can be supported, in certain circumstances, solely by a plaintiff's testimony about his or her emotional distress," *id.* at 1068. Based on these principles, the court concluded that it was not unreasonable for the jury to have been convinced that Ms. Deloughery suffered emotional distress, despite the fact that she had never sought professional help for her distress and the fact that she had "kept a stiff upper lip when on the job after her

promotion was turned down." R.121 at 6. Therefore, the court concluded that some measure of compensatory damages for emotional distress was warranted.

The court observed that the real question in the case was whether the jury had awarded an appropriate amount of damages. Relying on *Webb v. City of Chester*, 813 F.2d 824, 836 (7th Cir. 1986), which reviewed awards in other employment discrimination cases, the court determined that the current dollar value of the high award amounts approved in *Webb* would be $50,000 to $100,000. R.121 at 11. The court also noted that it felt obligated to follow dictum from *Neal v. Honeywell, Inc.*, 191 F.3d 827, 832 (7th Cir. 1999): "Had [the plaintiff] merely lost her job as a result of the discrimination, we would think $200,000 excessive, even though [the plaintiff] suffered ostracism, a year-long depression, and upheaval in her life."

Ultimately, in light of these cases, the court concluded that "a rational connection between the $250,000 award and the evidence in this case [was] lacking." R.121 at 12. Therefore, the court proposed that it would grant the City's motion for a new trial on the issue of damages unless Ms. Deloughery accepted remitted compensatory damages of $175,000. The court noted that $175,000 was "an amount . . . well within the range of reasonableness given the particular circumstances of this case." *Id.* Ms. Deloughery accepted the remitted damages award, and, accordingly, the district court denied the City's motion for a new trial on damages.

Ms. Deloughery also filed a motion for equitable relief in the form of promotion to captain. The district court granted Ms. Deloughery's motion for equitable relief and ordered the City to promote her to captain within 120 days. The district court later granted Ms. Deloughery's motion for attorneys' fees and costs.

## II

## DISCUSSION

### A.  Standard of Review

This court reviews a district court's denial of a post-trial motion for a new trial according to an abuse of discretion standard. *See American Nat'l Bank & Trust Co. of Chicago v. Reg'l Transp. Auth.*, 125 F.3d 420, 431 (7th Cir. 1997). We also review a district court's remittitur for abuse of discretion. *See David v. Caterpillar, Inc.*, 324 F.3d 851, 864 (7th Cir. 2003).

### B.  New Trial Based on Inconsistent Jury Verdicts

The City contends that there is no way to reconcile the jury's verdicts in this case and, consequently, submits that the district court abused its discretion by denying the City's motion for a new trial. The crux of the City's claim is that, given the district court's instructions to the jury, it was impossible for the jury to have acted rationally and to have found for Ms. Deloughery on the Title VII claim but against her on the First Amendment claim.

"As a rule civil juries must return consistent verdicts." *Will v. Comprehensive Accounting Corp.*, 776 F.2d 665, 677 (7th Cir. 1985). If possible, this court must reconcile apparently inconsistent verdicts, rather than overturn them. *See American Nat'l Bank*, 125 F.3d at 431. A party claiming that inconsistent verdicts have been returned is not entitled to a new trial "unless no rational jury could have brought back" the verdicts that were returned.[3] *Will*, 776 F.2d at 678. A new

---

[3]  This court has found inconsistent verdicts, for instance, where a jury returned special verdicts finding that "the filing of age discrimination charges was a determining cause for [the plain-
(continued...)

trial on all claims is the appropriate remedy (rather than judgment as a matter of law) in a case in which the jury has returned inconsistent verdicts. *See Gordon*, 29 F.3d at 298-99.

In determining whether the jury's verdicts could be reconciled, the district court looked closely at its own instructions. With respect to Ms. Deloughery's Title VII claim, the district court instructed the jury that it should find for Ms. Deloughery if she proved that the City decided not to promote her "in retaliation for filing charges with the [EEOC] and the [IDHR] and/or for complaining about and opposing discrimination within the Chicago Police Department." Tr.IV at 597. With respect to Ms. Deloughery's First Amendment claim, the district court instructed the jury that it should find for Ms. Deloughery if she proved that "her exercise of her right of free speech was a substantial or motivating factor in Hillard's decision not to promote the plaintiff to captain." *Id.* The district court further instructed the jury "that activity in opposing discrimination . . . is protected by the constitutional right of free speech." *Id.* at 598.

We believe that the district court did not abuse its discretion in concluding that the jury's verdicts in this case can be reconciled. As the district court pointed out, the jury could have found for Ms. Deloughery on the Title VII claim by accepting her contention that CPD had retaliated against her for filing charges with the EEOC and IDHR, while still

---

<sup>3</sup> (...continued)
tiff's] discharge" but also finding that the defendant did *not* "'willfully' violate[] the age discrimination law when it discharged plaintiff." *Rose v. Hearst Magazines Div., The Hearst Corp.*, 814 F.2d 491, 493 (7th Cir. 1987). It was inconsistent to find retaliation as well as nonwillfulness because a jury finding of retaliatory discharge necessarily also finds willfulness. *Id.*

rejecting her allegation that she had not been promoted in retaliation for her "opposi[tion] to discrimination" within CPD. Having rejected the idea that CPD retaliated against Ms. Deloughery for her activity opposing discrimination, the jury also could have concluded—because "activity in opposing discrimination" was described as being "protected by the . . . right of free speech"—that Ms. Deloughery's free speech activities were *not* a motivating factor in the decision not to promote her.

To have found as we have just described, the jury would have had to understand the practice of "filing charges with the [EEOC] and the [IDHR]" as falling outside the class of "activit[ies] . . . opposing discrimination in public employment." This understanding is entirely consistent with the district court's instructions. Read in conjunction with its instruction "that activity in opposing discrimination . . . is protected by the constitutional right of free speech," the district court's instruction on the Title VII claim—which phrased "filing charges . . . *and/or* . . . opposing discrimination" in the disjunctive—could have appeared to the jury to recognize two kinds of activity against which CPD might have retaliated, one protected by the First Amendment and one protected only by Title VII.

Anticipating our conclusion, the City has argued that it is contrary to the law of this circuit for the jury to have thought that "filing charges" was not protected by the constitutional right of free speech. However, the City's argument on this point fails for two reasons. First, as Ms. Deloughery points out, the City cannot now challenge the jury instructions as a misstatement of the law of this circuit because it did not object to the instructions at trial. *See, e.g., R.J. O'Brien & Assocs., Inc. v. Forman*, 298 F.3d 653, 657 (7th Cir. 2002) ("We will not make an end run around the failure to object to the jury instructions . . . .").

Furthermore, although the filing of an employment grievance is entitled to constitutional protection if it addresses a matter of public concern, it is not at all clear that Ms. Deloughery's filing of charges was protected by the First Amendment. *See Zorzi v. County of Putnam*, 30 F.3d 885, 897 (7th Cir. 1994) (recognizing that, under certain circumstances, the filing of charges of discrimination or of a lawsuit claiming discrimination will not constitute a matter of public concern); *see also Yatvin v. Madison Metro. Sch. Dist.*, 840 F.2d 412, 419 (7th Cir. 1988) ("[N]ot every legal gesture . . . is protected by the First Amendment."). As Ms. Deloughery points out, the jury was not asked to determine whether her filing of charges touched on a matter of public concern. And, as we have explained at length, the district court's instructions certainly did not require the jury to treat "filing charges" as equivalent to constitutionally-protected "activity in opposing discrimination."

The City also argues that the fact that the jury returned verdicts *against* Johnston on *both* of her claims is proof that the jury's verdicts on Ms. Deloughery's claims were inconsistent, since the two women presented "identical" evidence. Appellant's Br. at 29. Ms. Deloughery contends that the City has waived this argument by failing to present it to the district court on its motion for a new trial. Notwithstanding the City's likely waiver of this argument, the verdicts returned on Johnston's claims do not affect our view of the jury's verdicts as to Ms. Deloughery. Even if the evidence about Johnston's filing of charges was the same as Ms. Deloughery's evidence, it was well within the jury's role as factfinder to determine that Ms. Deloughery's actions influenced Superintendent Hillard's decision not to promote her, while also concluding that Johnston's actions had no effect on him.

The City makes one final argument with respect to the jury's verdicts: It claims that the jury was sympathetic to

Ms. Deloughery but skeptical of her allegations and so decided to split the difference by finding for her on one claim and against her on another. *Cf. United States ex rel. Chandler v. Cook County*, 277 F.3d 969, 977 (7th Cir. 2002) ("There is always the danger that the 'deep pocket' of the municipality's tax base will tempt a jury to succumb to an unprincipled determination."). Courts cannot indulge in such speculation; they are "required to reconcile" inconsistent jury verdicts "if possible." *American Nat'l Bank*, 125 F.3d at 431 (internal quotation omitted). As we already have explained, the district court recognized that the jury's verdicts on Ms. Deloughery's claims can be reconciled. Accordingly, we shall affirm the district court's denial of the City's motion for a new trial as an appropriate exercise of its discretion.

## C. Remittitur

The City also submits that the award of compensatory damages should be reduced further or vacated altogether for a new trial on damages. Generally, we review an award of compensatory damages with an eye to three considerations: "(1) whether the award is monstrously excessive;[4] (2) whether there is no rational connection between the award and the evidence; and (3) whether the award is roughly comparable to awards made in similar cases." *David*, 324 F.3d at 864. When "the district court has remitted a portion of the jury's award and the defendant claims that the remitted award is still excessive," this court must "review

---

[4] We have recognized that "the 'monstrously excessive' inquiry is a vague one that may simply be another way of asking whether there is a rational connection between the award and the evidence." *Harvey v. Office of Banks & Real Estate*, 377 F.3d 698, 713-14 (7th Cir. 2004).

the damages evidence in the light most favorable to the jury's verdict, and [the remittitur] must stand unless there is no rational connection between the evidence and the . . . [remitted] award." *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 516 (7th Cir. 1993).

The City contends that there is no rational connection between the remitted award and the evidence in the present case. For instance, the City points out that Ms. Deloughery never has sought professional help for her emotional distress, and it suggests that the real source of that distress was her divorce or the stress of caring for small children, not the City's actions. The City also submits that this award is not at all comparable to awards in similar cases.

We first shall consider whether the evidence in the present case rationally can be understood to support the remitted award. Here, we believe there is a sufficient factual predicate in the record to justify the decision of the district court. As Chief Judge Flaum wrote in *Tullis v. Townley Engineering & Manufacturing Co., Inc.,* 243 F.3d 1058, 1068 (7th Cir. 2001), "[a]n award for nonpecuniary loss can be supported, in certain circumstances, solely by a plaintiff's testimony about his or her emotional distress." Although the City regards the evidence as meager, neither the jury nor the trial judge took that view. *See id.* The record can be read as the story of a highly motivated female police officer, with a family heritage in law enforcement, being frustrated in her quest for greater responsibility simply because she had asserted her right to be free from discrimination. The jury was informed of the other possible causes of Ms. Deloughery's emotional distress but believed that the defendant's actions nevertheless caused her significant trauma. Her testimony was succinct and to the point; however, brevity and self-control in a judicial proceeding need not be interpreted as a weak case, and the jury and trial judge were entitled to

take that view.[5]

We are reluctant to substitute our assessment of the evidence in place of the discretion of the district court, exercised in light of what it witnessed at trial. The district court had the benefit of observing Ms. Deloughery's demeanor on the stand and thus was particularly well-positioned to assess whether the jury's award rationally reflected the evidence in the case. As the Supreme Court has noted, "[t]rial judges have the unique opportunity to consider the evidence in the living courtroom context, . . . while appellate judges see only the cold paper record." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 438 (1996) (internal quotations omitted).

Moreover, in this case, the district court made an explicit determination, based on Ms. Deloughery's demeanor, that the CPD's retaliation against her had a "significant emotional impact . . . on her." R.121 at 6. Furthermore, the court thought it reasonable for the jury to conclude that Ms. Deloughery "had suffered and would continue to suffer significant emotional distress as a result of Hillard's decision to deny her promotion to captain." *Id.* at 7. We also are inclined to accept the award of damages in this case because the district court, which had the benefit of witnessing trial, itself remitted the jury's award to an amount that it determined was commensurate with the evidence in the present case viewed in light of comparable cases. Indeed, the district court gave the matter of emotional distress thoughtful and focused attention. After reading the briefs and hearing the arguments of counsel, we have read the pertinent parts of the record. But a cold record is a poor substitute for the live

---

[5] The jury was entitled as well to conclude that she need not have consulted a mental health professional. *See Tullis v. Townley Eng'g & Mfg. Co., Inc.*, 243 F.3d 1058, 1068 (7th Cir. 2001).

testimony that the district court heard and evaluated. We shall not upset the district court's determination that the evidence in the case supported a substantial award of damages for emotional distress.

We also shall consider whether the award is comparable to awards in similar cases. The City argues that, even the remitted damages in this case are far in excess of amounts that we have approved in previous cases involving retaliation.[6] *See, e.g., David*, 324 F.3d at 864-65 (approving compensatory damages of $50,000—remitted from $100,000 by trial court—in case of retaliatory denial of promotion); *see also Cygnar v. City of Chicago*, 865 F.2d 827, 848 (7th Cir. 1989) (noting that "[t]he jury's award . . . [was] significantly higher than any award approved in the context of unconstitutional *firings*," and approving compensatory damages of $15,000—remitted from $55,000 by trial court—following retaliatory transfer) (emphasis in original).

However, even though "[a]wards in other cases provide a reference point that assists the court in assessing reasonableness[,] they do not establish a range beyond which awards are necessarily excessive. Due to the highly fact-specific nature of Title VII cases, such comparisons are rarely dispositive." *Lampley v. Onyx Acceptance Corp.*, 340 F.3d 478, 485 (7th Cir. 2003), *cert. denied*, 540 U.S. 1182 (2004). Furthermore, as Ms. Deloughery points out, there are

---

[6] As a corollary, the City points to 42 U.S.C. § 1981a(b)(3)(D), which sets the outer limits of compensation for "emotional pain, suffering, inconvenience, mental anguish . . . and other nonpecuniary losses" at $300,000. *See also Lust v. Sealy*, 383 F.3d 580, 590-91 (7th Cir. 2004) (suggesting that statutory caps on damages may serve a constitutional purpose). The City argues that this outer limit is further proof that the award in this case is excessive.

cases from this circuit that suggest that damages which approach the amount awarded in this case may be appropriate. *See, e.g., Harvey v. Office of Banks & Real Estate*, 377 F.3d 698, 714 (7th Cir. 2004) (noting that the "jury could have reasonably concluded that awards in the range of $50,000 to $150,000 were necessary to compensate" the plaintiffs in a discrimination case when the evidence showed that plaintiffs suffered from "continuing mental and physical ailments arising from . . . problems at work," and upholding district court's denial of new trial on damages). Although this award is higher than that approved in some other cases, we believe that the award here is sufficiently commensurate with other Title VII cases in this circuit to be within the district court's discretion to have made.

"Given the discretionary standard of review and the district court's thoughtful consideration of this issue," *David*, 324 F.3d at 864, we conclude that the district court acted within its discretion in remitting the jury's award in the present case to $175,000, and we uphold the award.

## Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*