EASTERBROOK, Circuit Judge.
Police in Milwaukee saw a car stopped within 15 feet of a crosswalk, which is unlawful unless the car is “actually engaged in loading or unloading or in receiving or discharging passengers”. Wis. Stat. § 346.53(5). One police car drew up parallel to the stopped car, and another drew up behind. Shining lights through the car’s windows (it was after sunset), police saw a passenger in the back seat try to hide a firearm. Randy Johnson, the passenger, was prosecuted for possessing a weapon that, as a felon, he was forbidden to have. 18 U.S.C. § 922(g)(1). After the district court denied his motion to suppress the gun, see 2014 U.S. Dist. LEXIS 135367 (E.D.Wis. Sep. 25, 2014), adopting 2014 U.S. Dist. LEXIS 135374 (E.D.Wis. Aug. 7, 2014), Johnson entered a conditional guilty plea and was sentenced to 46 months’ imprisonment. His sole argument on appeal is that the district judge should have granted the motion to suppress.
Johnson concedes that the car was stopped within 15 feet of a crosswalk. The district court held that this gave the police probable cause to issue a ticket, see Whren v.. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)—and as soon as they approached they saw the gun.
Johnson says that the statutory exception for receiving or discharging cargo or passengers means that the police could not have probable cause until they had observed the car long enough to know that it was not within the scope of the exception. The district judge considered and rejected that possibility. Even a brief glimpse of the car revealed probable cause, because officers need not negate all possible defenses. They can hand out tickets (or make arrests) and leave to the judicial process the question whether a defense applies. See, e.g., Baker v. McCollan, 443 U.S. 137, 145-46, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); Hurem v. Tavares, 793 F.3d 742 (7th Cir.2015); Askew v. Chicago, 440 F.3d 894 (7th Cir.2006). What’s more, the district judge thought, a brief look was long enough to think that the car was just sitting there. The car’s doors were closed. No one was getting in or out, walking away, or approaching. When the police got closer they saw that no one was in the driver’s seat, a further problem because the statutory exception has a proviso: a vehicle stopped for loading or unloading must be “attended by a licensed operator so that it may promptly be moved in case of an emergency or to avoid obstruction of traffic.” Wis. Stat. § 346.53(5).
The district court added that, whether or not the police had probable cause, there was enough evidence to justify a brief stop for the purpose of investigation. See United States v. Shields, 789 F.3d 733, 744-46 (7th Cir.2015), another case arising *410 from a car stopped too close to a crosswalk. The judge assumed that pulling police cruisers alongside and behind the stopped car amounted to a seizure, see Helen v. North Carolina, — U.S. —, 135 S.Ct. 530, 536, 190 L.Ed.2d 475 (2014), even though it was not blocked in front, but thought it reasonable for the police to investigate whether the stopped car was within the scope of the statutory exception. Shields establishes that probable cause to believe that a parking offense is ongoing justifies at least a brief stop. Johnson has not asked us to reexamine Shields — and the holding of Atwater v. Logo Vista, 532 U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001), that a fine-only offense may be followed by a custodial arrest, forecloses any argument that police must refrain from making stops to enforce those laws ' that lead to citations. No driver is free to zoom away while the police are writing a parking ticket.
Police approach stopped cars countless times every day; the number of parking tickets issued (usually to unoccupied cars) is high. Sometimes officers write tickets; sometimes they don’t; if the car is occupied, the difference may depend on what the driver says. The Fourth Amendment requires searches and seizures to be reasonable; it does not demand that police resolve all possible defenses and exceptions before asking the first question.
Indeed, because the car was stopped in a public street, police did not need any reason at all to approach and look through the window. See, e.g., United States v. Dunn, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987); United States v. Contreras, No. 15-1279, 820 F.3d 255, 411-13 (7th Cir. Apr. 19, 2016), slip op. 7-10. Officers do not violate the Fourth Amendment by viewing things they can see “from a public vantage point where they have a right to be.” Florida v. Riley, 488 U.S. 445, 449, 109 S.Ct. 693, 102 L.Ed.2d 835 (1989). Contrast Florida v. Jardines, — U.S. —, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013) (discussing limits on what can be done in or near a home). It was the fact that the police approached the car that enabled them to see the gun. Everything else followed naturally (and legally).
We grant that the police did more than just stroll up: two squad cars, which bathed the parked car in bright light, implied that the occupants were not free to drive away. But as it happened the number of cars, and the use of lights, did not play a role in the causal sequence. (The cruisers’ lights may have played some role by supplementing the streetlamps, but Johnson does not contend that shining light into a car on a public street is unreasonable under the Fourth Amendment. See Dunn, 480 U.S. at 305, 107 S.Ct. 1134.) No one was in the driver’s seat, so the parked car could not drive away, no matter what the occupants wanted or thought they were free to do. A lone officer who ambled up amiably and shone a flashlight through the window would have seen everything needed to set up a lawful seizure of the gun. When the contested activity (here, the show of force through the use of two cars and bright lights) does not matter, it is also not a basis for suppressing evidence. When discovery would have occurred anyway, through proper means, the exclusionary rule would be overkill and must not be employed. See, e.g., Nix v. Williams, 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984).
An undertone of Johnson’s brief is the suggestion that the police displayed excessive force, whether or not they had reasonable suspicion or even probable cause. Is it reasonable, Johnson wonders, for the police to use two cruisers and powerful *411 lights just to determine whether someone deserves a ticket for a parking violation? (Johnson does not contend that excessive force was used, only that the display was over the top.) Was it necessary, he asks, for one officer to open a door and tell all occupants to put their hands where they could be seen?
The police call this a high-crime area, and perhaps the presence of multiple officers and electric lights — which Justice Brandéis called “the most efficient policeman,” Other People’s Money 62 (1933)— prevented the handgun from being used. But we need not try to determine whether the police put on an unnecessary display. This is a criminal prosecution, not a suit seeking damages. We held in United States v. Jones, 214 F.3d 836 (7th Cir.2000), that damages, not the exclusion of evidence, is the appropriate remedy for the use of unreasonable force, when the application of reasonable force would have produced the same evidence anyway.
The Supreme Court reached the same conclusion in Hudson v. Michigan, 547 U.S. 586, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006), when holding that a violation of the knoek-and-announce requirement does not justify exclusion, because if the police had knocked and waited a reasonable time, as they should have done, they would have seized the same evidence. The Justices discussed the high social costs of excluding evidence and held that damages are the right remedy for search-and-seizure errors that do not give the police access to evidence that could not have been obtained lawfully. See also, e.g., United States v. Langford, 314 F.3d 892 (7th Cir.2002). The multiple ears, the searchlights, and the visible-hands order all were out of the causal sequence and do not justify suppression, even if each step was unjustified when compared with sending a single officer to saunter up to the parked car.
Likewise damages would be the right remedy for a stop motivated by race, as they are for other violations of the Equal Protection Clause, if the police had probable cause or were otherwise where they had a right to be, and therefore did not violate the Fourth Amendment when seeing a gun. At all events, Johnson does not contend that his race, or that of the other occupants, played any role in this stop.
So although we agree with the district court that, given Shields, the police had at least reasonable suspicion to stop the parked car long enough to find out what was going on, we also conclude that the police would have discovered the same evidence without a seizure (because any officer was free to walk up to the parked car, which lacking a driver was not going anywhere), and that exclusion of evidence in a criminal prosecution would be the wrong remedy for the harmless steps of using extra cruisers and excessive lighting.
AFFIRMED